UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RATLALE DAVID MOKONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00566-SRC |
| | ) | |
| UNITED STATES CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>Memorandum and Order</u>

Mokone filed two immigration forms with USCIS.  He then sued USCIS and other

individuals (collectively, "USCIS") for unreasonably delaying the adjudication of these forms.

USCIS filed a Motion to Dismiss, arguing that it already adjudicated one form (twice, by the date

of this order) and cannot address the other because Mokone is in removal proceedings.  The

Court reviewed USCIS's motion and grants it because the Court lacks subject-matter jurisdiction

over Mokone's claims.

## I.       Background

Ratlale David Mokone, a self-represented litigant, filed an I-485 application and an I-360

petition with United States Citizenship and Immigration Services.  *See* doc. 1 at 1 (The Court

cites to page numbers as assigned by CM/ECF.).  Mokone's I-485 is an application for an

adjustment of status.  *See* 8 C.F.R. § 245.2(a)(3)(ii) ("An application for adjustment of status is

submitted on Form I–485, Application for Permanent Residence").  And if Mokone's I-360 had

been approved, he could have sought permanent residence under the Violence Against Women

Act as an abused spouse.  *See* 8 U.S.C. § 1154(a)(1)(A)(iii); 8 U.S.C. § 1255(a); 8 C.F.R. §

204.1(a)(3); 8 C.F.R. § 204.2(c).  Although VAWA names women, *see* Violence Against

Women Act, Pub. L. No. 103-322, 108 Stat. 1902, 1953–54 (1966), the Act's protections apply

to all "alien[s]," *see* 8 U.S.C. § 1154(a)(1)(A)(ii), a term that includes both women and men, 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States").

Mokone filed this claim under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, against USCIS for its "unreasonable and unjustifiable delay and no correspondence" in processing Mokone's I-360 and I-485.  Doc. 1 at 1–2.  Although Mokone devotes most of his Complaint to alleging unreasonable processing delays against USCIS, he curiously admits in one part of his motion that USCIS "den[ied] [his] petitions" after he did not respond to its "request for evidence."  Doc. 1 at 3–4.  USCIS filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that (i) the Court lacks subject-matter jurisdiction over Mokone's claims, and (ii) Mokone fails to state claims upon which the Court can grant relief.  *See* doc. 6, doc. 7 at 6–15.

Mokone did not file a response to USCIS's Motion to Dismiss by his July 10, 2025 deadline.  *See* E.D.Mo. L.R. 4.01(B).  The Court ordered him to (i) show cause why it should not dismiss this case for Mokone's failure to prosecute, and (ii) file any response in opposition to USCIS's motion.  Doc. 13.  Mokone responded to the Court's Order stating that he "ha[s] not filed a response to the defendants' [M]otion to [D]ismiss because [he] ha[s] been working with USCIS" regarding the agency's processing of his I-360.  Doc. 14 at 2–3.  Mokone also declared that "USCIS has proceeded with thoroughness, care, and commitment to a complete review" of his I-360.  *Id.* at 10.  Then, he asked for an extension of time to file his response to USCIS's motion—either until October 15, 2025 or within 30 days of receiving USCIS's final determination on his I-360.  *See id.* at 9.

Mokone filed his response to USCIS's Motion to Dismiss on October 27, 2025.  Doc. 16. Mokone spends most of his response challenging USCIS's decision to deny his I-360, *id.* at 2–

2

12, but he briefly argues that this case should not be dismissed as moot, because "[w]ithout judicial oversight, the unreasonable delays that necessitated this mandamus action could recur," *id.* at 9. USCIS filed a reply. Doc. 18.

The Court grants USCIS's Motion to Dismiss, doc. 6, because Congress stripped courts of subject-matter jurisdiction to review claims like Mokone's, *see* 8 U.S.C. § 1252(a)(2)(B). The Court therefore dismisses Mokone's Complaint, doc. 1, and denies as moot Mokone's request for an extension of time to file his response to USCIS's motion, doc. 14.

## II.    Standard

As discussed, Mokone filed this claim under the Administrative Procedure Act and the Mandamus Act. Doc. 1 at 2. The Court first determines whether it has subject-matter jurisdiction. Because "[s]ubject-matter jurisdiction . . . involves a court's power to hear a case," it "can never be forfeited or waived." *Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024). And a "requirement" exists "that jurisdiction be established as a threshold matter." *Id.* This requirement "springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (quoting *Patchak v. Zinke*, 583 U.S. 244, 254 (2018) (cleaned up)).

## III.    Discussion

Congress stripped courts of jurisdiction over various cases alleging delayed processing of immigration petitions and applications. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). This jurisdiction-stripping statute provides:

> Notwithstanding any other provision of law . . ., including . . . [28 U.S.C. §] 1361 . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> > (i) any judgment regarding the granting of relief under section . . . 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.

8 U.S.C. § 1252(a)(2)(B).  Congress enacted a "broad prohibition of judicial review in § 1252(a)(2)(B)(ii)." *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1099 (8th Cir. 2016).  This provision "bars judicial review of decisions 'made discretionary by legislation.'" *Bouarfa v. Mayorkas*, 604 U.S. 6, 17 (2024) (emphasis removed) (quoting *Kucana v. Holder*, 558 U.S. 233, 247 (2010)).  "Two elements trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: (1) a decision or action by the Attorney General or the Secretary of Homeland Security and (2) statutorily specified discretion . . . ." *Thigulla*, 94 F.4th at 774.  The Court finds that Mokone's claims fall within the category of cases over which Congress stripped the courts of jurisdiction and dismisses Mokone's Complaint.

Traditionally, agencies retain "discretion over internal procedures." *Rajasekaran*, 815 F.3d at 1099.  Therefore, when section 1252(a)(2)(B)(ii) refers to "any other decision or action," it naturally refers to decisions or actions "of whatever kind—not just discretionary" ones. *Fofana v. Noem*, 163 F.4th 1135, 1138–39 (8th Cir. 2026); *see also Patel v. Garland*, 596 U.S. 328, 338–39 (2022) (finding that the language of section 1252(a)(2)(B)(i) is very broad, "appl[ying] to judgments of whatever kind . . ., not just discretionary judgments or the last-in-time judgment"); *Fofana*, 163 F.4th at 1138 (noting that "[t]he clause (i) enumeration" from *Patel* "is instructive in determining the meaning of the clause (ii) catchall" (cleaned up) (citing *Kucana*, 558 U.S. at 247).

Congress provided statutorily specified discretion for the adjudication of I-360s for VAWA petitioners such as Mokone, *see* 8 U.S.C. §§ 1154(a)(1)(A)(iii), 1154(b), and I-485s, *see* 8 U.S.C. §§ 1255, 1159(b)(1), 1229b(b)(1).  And the Court finds that determining *when* to

adjudicate I-360s and I-485s is among the discretionary decisions or actions precluding judicial review under section 1252(a)(2)(B)(ii).

The Court first notes that, while the I-360 and I-485 statutes reference the authority of the Attorney General, "the Department of Homeland Security absorbed the former Immigration and Naturalization Service." *Abdelwahab v. Frazier*, 578 F.3d 817, 819 n.2 (8th Cir. 2009) (citing *Kirong v. Mukasey*, 529 F.3d 800, 802 n.1 (8th Cir. 2008)); *see also* 6 U.S.C. § 271(b)). So, the "authorities described . . . as having been exercised by the Attorney General and the Immigration and Naturalization Service (INS) now reside in the Secretary of Homeland Security." *Clark v. Martinez*, 543 U.S. 371, 375 n.1 (2005); *see also* 6 U.S.C. § 557 ("With respect to any function transferred by or under this chapter . . . reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary."); *Nielsen v. Preap*, 586 U.S. 392, 398 n.2 (2019) ("We replace 'Attorney General' with 'Secretary' because Congress has empowered the Secretary to enforce the Immigration and Nationality Act . . . .").

However, "the Attorney General retains the authority to administer removal proceedings." *Nielsen*, 586 U.S. at 398 n.2; *see* 8 C.F.R. § 1003.0 (creating the Executive Office for Immigration Review within the Department of Justice, which oversees immigration judges); 8 U.S.C. § 1103(a)(1) (conferring to the Secretary the authority to administer and enforce all immigration and naturalization laws except those powers conferred upon the Attorney General); 8 U.S.C. § 1103(g)(1) (providing that the Attorney General retains the powers of the Executive Office for Immigration Review). This distinction doesn't ultimately impact the Court's jurisdiction, however, because section 1252(a)(2)(B)(ii) strips the Court of jurisdiction over actions taken by either the Attorney General or the Secretary. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

5

## A.    Mokone's I-360

"[T]he VAWA self-petitioning process allows an alien spouse of an abusive United States citizen to seek classification as an immediate relative or a preference immigrant by filing a Form I-360 with USCIS." *Franjul-Soto v. Barr*, 973 F.3d 15, 17 (1st Cir. 2020) (citing 8 C.F.R. § 204.1(a)(3)).  Among other things, the petitioner must "demonstrate[] to the [Secretary] that . . . during the marriage . . . , the alien . . . has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse."  8 U.S.C. § 1154(a)(1)(A)(iii).  Then, the Secretary "investigat[es] . . . the facts in each case," and "shall . . . approve the petition" "if he determines that the facts stated in the petition are true" and the petitioner is "an immediate relative specified in section 1151(b)."  8 U.S.C. § 1154(b); *see also* 8 U.S.C. § 1151(b)(2)(A)(i) (including "spouses . . . of a citizen of the United States" as "immediate relatives").

Based on the plain text of the statute, the Secretary has discretion in his "investigation of the facts."  8 U.S.C. § 1154(b).  The Secretary must make subjective determinations such as what the bar is for a petitioner to demonstrate battery or extreme cruelty, what counts as extreme cruelty, and what weight to give evidence submitted by the petitioner.  Section 1154(b) therefore provides the Secretary discretion to determine factual eligibility for a I-360 VAWA petitioner.

And decisions involving the pace of the Secretary's investigation and subsequent adjudication—in light of the investigation—are among the decisions "of whatever kind," *Fofana*, 163 F.4th at 1138–39, for which Congress enacted a "broad prohibition of judicial review in § 1252(a)(2)(B)(ii)," *Rajasekaran*, 815 F.3d at 1099.  *See also Thigulla*, 94 F.4th at 774 (noting that statutorily specified discretion and a decision or action "trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar"); *Tokas v. U.S. Citizenship & Immigr. Servs.*, No. 4:25-cv-01754-SEP, 2025

6

WL 3501066, at *3 (E.D. Mo. Dec. 6, 2025) (finding that under section 1252(a)(2)(B)(ii), courts lack subject-matter jurisdiction to review an I-360-delay claim).[1]

### B.    Mokone's I-485

The Court similarly may not review USCIS's delay of Mokone's I-485.  8 U.S.C. § 1255(a) authorizes the Secretary to make adjustment-of-status decisions for visa petitioners. Section 1255(a) provides that the "status of an alien . . . *may* be adjusted by the [Secretary], *in his discretion and under such regulations as he may prescribe.*"  8 U.S.C. 1255(a) (emphasis added); *see also* 8 U.S.C. § 1159(b) (providing that the Secretary of Homeland Security or the Attorney General, "may," in their "discretion and under such regulations . . . [they] may prescribe," adjust the status to permanent residence of an alien granted asylum); 8 U.S.C. § 1229b(b)(1) (providing that the "Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence").

By stating the Secretary, "in his 'discretion,' 'may' adjust status and 'may' prescribe regulations, Congress, in Section 1255(a), set out the discretionary authority." *Thigulla*, 94 F.4th at 775.  "Section 1255(a) expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*— including the pace at which that process is undertaken—to the discretion of the [Secretary]." *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024).

Therefore, "the Court finds that . . . the [alleged] delays in adjudicating [Mokone's] [I-485] qualif[y] as a 'decision or action' for the purposes of § 1252(a)(2)(B)(ii)." *Tokas*, WL 3501066, at *2; *see Chalamalesetty v. Jaddou*, No. 4:22-cv-3182, 2023 WL 6387976, at *1, 3 (D. Neb. Sept. 29, 2023) (finding no jurisdiction to examine an I-485 delay), *aff'd*, No. 23-3216, 2024 WL 1920254, at *1 (8th Cir. Apr. 30, 2024) (affirming and noting that "this court agrees

---

[1] In saying so, the Court remains mindful of its prior order in *Wilkes*, which involved different circumstances from those present here.  *Wilkes v. Blinken*, No. 4:21-cv-01148-SRC, 2022 WL 1288402 (E.D. Mo. Apr. 29, 2022).

that the district court lacked subject-matter jurisdiction"); *see also Beshir v. Holder*, 10 F. Supp. 3d 165, 173 (D.D.C. 2014) (noting that "8 U.S.C. § 1159(b) and 8 U.S.C. § 1255(a)" are "analogous statutes . . ., and their plain language supports the conclusion that the pace of adjudication is discretionary."); 8 U.S.C. § 1252(a)(2)(B) (providing no judicial review for "any judgment granting relief under section . . . 1229b" or "any other decision or action").

Nothing Mokone argues in his response to USCIS's supplemental briefing changes the analysis here. *See generally* doc. 25. Mokone curiously appears to *ask* USCIS for additional delay on his I-485, so that the agency may adjudicate his I-360 and then use that petition to grant his I-485. *See* doc. 25 at 4 ("[T]he I-485 remains properly held in abeyance pending the I-360."); *id.* at 13 (asking USCIS to "adjudicate [his] I-360 . . . within 90 days" and "upon I-360 approval, adjudicate the I-485"). Mokone's Complaint alleges an unreasonable-delay claim regarding his I-360 and I-485, doc. 1 at 1, and his supplemental briefing makes arguments in favor of his unreasonable-delay claim, doc. 25 at 4 (arguing why the Court has jurisdiction to review the pace of his I-485's adjudication). Mokone may not amend his Complaint through his supplemental briefing. *See Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014); *see also* Fed. R. Civ. P. 15. The Court accordingly may analyze, as it did above, whether it has jurisdiction over the unreasonable-delay claim Mokone asserts in his Complaint.

Mokone claims that "[t]he duty to reach a decision on a pending application is ministerial and mandatory; it is the decision itself" to "grant or deny . . . that is discretionary." Doc. 25 at 4. He cites *Norton v. Southern Utah Wilderness Alliance* for the proposition that mandamus claims exist to compel "discrete agency action that [the agency] is required to take." *Id.* (citing 542 U.S. at 64). This general proposition in *Norton*, a case having nothing to do with immigration, does not support Mokone's claim for jurisdiction here. Mokone also cites *Aboushaban v. Mueller*, *id.* at 5, in which the court found that the federal government has a "duty to adjudicate

8

plaintiff's [I-485] within a reasonable time," No. C 06-1280 BZ, 2006 WL 3041086, at *2 (N.D. Cal. Oct. 24, 2006).  But *Aboushaban* precedes the Supreme Court and Eighth Circuit cases cited in this opinion, and it does not discuss section 1252(a)(2)(B).  *See id.*  Nothing in these cases, or in any other cases Mokone cites, contradicts the Court's jurisdictional analysis above.  *See generally* doc. 25.

And because Mokone's other arguments don't support the Court's having jurisdiction, *see generally id.*, the Court dismisses his unreasonable-delay claims against USCIS for lack of jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii); *see Tokas*, 2025 WL 3501066, at *2 ("[E]ach of the delays in adjudicating" petitioner's I-360 and I-485 "qualifies as a 'decision or action' for the purposes of § 1252(a)(2)(B)(ii).").  Review under either the Mandamus Act or the APA is unavailable, because the statute explicitly removes jurisdiction "[n]otwithstanding any other provision of law . . ., including . . . [the Mandamus Act, 28 U.S.C. § 1361]."  8 U.S.C. § 1252(a)(2)(B); *see also Thigulla*, 94 F.4th at 774 ("The APA's right to judicial review does not apply when 'statutes preclude judicial review.'" (citing 5 U.S.C. § 701(a)(1)); *Bian v. Clinton*, 605 F.3d 249, 254 n.13 (5th Cir. 2010), *vacated as moot*, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010) ("section 1252 expressly precludes judicial review notwithstanding section 1361 (Mandamus Act) or *any* other provision of law." (citation omitted)).

IV.     **Conclusion**

Accordingly, the Court grants USCIS's [6] Motion to Dismiss, denies as moot Mokone's [1] request that the Court "[i]ssue [him an] immediate Employment Authorization Card whilst the case is pending," and also denies as moot Mokone's [14] request for an extension of time to respond to USCIS's motion.  An order of dismissal accompanies this Memorandum and Order.

So ordered this 27th day of March 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

9